# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| CAROL S. BUSH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 5:06-00766 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the Court on Plaintiff's Motion to Remand (Doc. No. 14.), Defendant's Motion for Judgment on the Pleadings (Doc. No. 15.), and Plaintiff's Reply. (Doc. No. 18.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Doc. Nos. 3 and 4.)

The Plaintiff, Carol S. Bush (hereinafter referred to as "Claimant"), filed an application for DIB on January 11, 2005 (protective filing date), alleging disability as of November 27, 2004, due to a heart murmur, a crushed right leg, poor balance, difficulty standing and walking, depression, and anxiety. (Tr. at 12, 14, 22, 29, 51, 52-53.) The claim was denied initially and on reconsideration. (Tr. at 22-24, 28-30.) On June 23, 2005, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 31.) The hearing was held on March 29, 2006, before the Honorable Charles R. Boyer. (Tr. at 232-51.) By decision dated June 28, 2006, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 12-19.) The ALJ's decision became the final decision of the

Commissioner on September 15, 2006, when the Appeals Council denied Claimant's request for review. (Tr. at 4-6.) On September 29, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Doc. No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's

remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2006). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning;

concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe

_____

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since her alleged onset date. (Tr. at 14.) Under the second inquiry, the ALJ found that Claimant suffered from status-post injury and surgery to fractures of the lower limbs, which were severe impairments. (Tr. at 14.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 15.) The ALJ then found that Claimant had a residual functional capacity to perform the full range of unskilled sedentary work. (Tr. at 15) At step four, the ALJ found that Claimant could not return to her past relevant work. (Tr. at 17.) The ALJ found that Claimant was not disabled, pursuant to Medical-Vocational Rule 201.21 of the Medical-Vocational Guidelines ("the grids"). (Tr. at 18.) The ALJ concluded that there were jobs existing in significant numbers in the regional and national economies which Claimant could perform. (Id.) On this basis, benefits were denied.  (Tr. at 18-19.)

5

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was born on October 21, 1956, and was 48 years old at the time of Claimant's alleged onset date of disability and was 49 years old at the time of the administrative hearing and the date of the ALJ's decision. (Tr. at 17, 51, 239.) Claimant had a high school education and two years of college, earning an Associate's Degree in forestry. (Tr. at 17, 239.) In the past, she worked as a machine operator/production worker, cook, library aid, and sewing machine operator at a sewing factory. (Tr. at 67-73, 236.)

 The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) Claimant's change in age constitutes a change in circumstances under the Social Security Regulations that requires remand, and (2) the ALJ erred in not utilizing a vocational expert at step five of the sequential analysis to identify specific jobs in the national and regional economies which Plaintiff could perform. (Doc. No. 13 at 2-6.) The Commissioner asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Doc. No. 15 at 5-15.)

**Borderline Age Situation.**

Claimant alleges that the ALJ erred in failing to address whether Claimant should have been considered a person "closely approaching advanced age" (age 50-54) under the Regulations for purposes of evaluating disability. (Doc. No. 13 at 3-5.) Claimant asserts that Claimant "was only 116 days from a change of age which could have been . . . determinative[] as to whether or not this Plaintiff received Social Security benefits." (Id. at 5.) Leaving all factors the same, as set forth in the administrative hearing, except for Claimant's age, Claimant asserts that she "would now be considered disabled under the . . . Regulations." (Id. at 3.) The Commissioner asserts that "this case is not a borderline situation because Plaintiff was four months shy of her birthday, and this is not within 'a few days or few months' of her turning 50." (Doc. No. 15 at 13.) Even if Claimant was a few months shy of turning 50, the Commissioner asserts that the Commissioner was not required

to use automatically the next higher age category under the grids. (Id. at 14.) This is because Claimant "has not identified any additional vocational adversity or adversities that would justify use of the next higher age category under the Grid Rules." (Id. at 15.)

As stated above, at step five of the sequential analysis, the Commissioner bears the burden of proving that the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education, work experience, skills, and physical shortcomings. 20 C.F.R. § 404.1520(f) (2006). One way to meet this burden is through the use of the grids. The Regulations establish "grids" which "take administrative notice of the availability of job types in the national economy for persons having certain characteristics, namely age, education, previous work experience, and residual functional capacity." Grant v. Schweiker, 699 F.2d 189, 191-92 (4th Cir. 1983); see generally 20 C.F.R. Chapter III, Pt. 404, Subpt. P, App.2, §§ 200.00-204.00 (2006). Each grid considers the strength or "exertional" component of a claimant's disability in determining whether jobs exist that claimant could perform in light of the vocational factors. Grant, 191-92; 20 C.F.R. Chapter III, Pt. 404, Subpt. P, App.2, §§ 200.00-204.00 (2006). In a case where the claimant has only exertional impairments, the grids may be applied and vocational expert testimony is not required. See Hays v. Sullivan, 907 F.2d 1453, 1458 (4th Cir. 1990).

In considering the claimant's age, the Regulations establish particular age categories: (1) younger person (under age 50), (2) a person closely approaching advanced age (age 50-54), and (3) a person of advanced age (age 55 or older). 20 C.F.R. § 404.1563(c)-(e) (2006). The claimant's age at the time of the ALJ's decision governs in applying the grids. See Varley v. Secretary of Health & Human Serv., 820 F.2d 777, 780 (6th Cir. 1987). At the time of the administrative hearing in the

8

instant case (March 29, 2006), Claimant was 49 years of age, but turned 50 on October 21, 1956, merely four months and 23 days, or 116 days, after the ALJ's June 28, 2006, decision. (Tr. at 17, 51, 239.) Considering Claimant a younger individual capable of performing a full range of sedentary work, the ALJ applied Rule 201.21 and found Claimant to be not disabled. (Tr. at 18-19.) Rule 201.21 states that a younger individual, with a high school education or more, capable of performing sedentary work, with skilled or semiskilled past work experience, is deemed "not disabled." 20 C.F.R. Chapter III, Pt. 404, Subpt. P, App. 2, § 201.21 (2006). These grids however, are not strictly applied. When a borderline age situation exists, the Regulations provide:

> We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 404.1563(b) (2006).

Generally, it appears that Claimants are in a borderline situation when they are about six months from an older age category. <u>Crook v. Barnhart</u>, 244 F.Supp.2d 1281, 1283-84 (N.D. Ala. 2003); <u>Pickard v. Commissioner of Soc. Sec.</u>, 224 F.Supp.2d 1161, 1168 (W.D. Tenn. 2002); <u>France v. Apfel</u>, 87 F.Supp.2d 484, 491-92 (D. Md. 2000)(five months borderline); <u>see also</u> <u>Daniels v. Apfel</u>, 154 F.3d 1129, 1133 (10th Cir. 1998)(collecting borderline age cases); Social Security Ruling ("SSR") 82-46c, 1982 WL 31427, at *6. The Social Security Administration has developed a test for determining whether a borderline situation exists:

> To identify borderline age situations when making disability determinations, adjudicators will apply a two-part test:
>
> (1) Determine whether the claimant's age is within a few days or a few months of a higher age category.

(2) If so, determine whether using the higher age category would result in a decision of "disabled" instead of "not disabled."

If the answer to one or both is "no," a borderline age situation either does not exist or would not affect the outcome. The adjudicator will then use the claimant's chronological age.

If the answer to both is "yes," a borderline age situation exists and the adjudicator must decide whether it is more appropriate to use the higher age or the claimant's chronological age. (Use of the higher age category is not automatic.) To decide which age category to use, take a "sliding scale" approach. Under this approach, the claimant must show progressively more additional vocational adversity(ies) – to support use of the higher age – as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens.

One finds additional vocational adversity(ies) if some adjudicative factor(s) is relatively more adverse when considered in terms of that factor's stated criteria, or when there is an additional element(s) which has adverse vocational implications. Examples of these additional vocational adversities are the presence of an additional impairment(s) which infringes upon – without substantially narrowing – a claimant's remaining occupational base; or the claimant may be barely literate in English, have only marginal ability to communicate in English, or have a history of work experience in an unskilled job(s) in one isolated industry or work setting. (An isolated industry would be such as fishing or forestry.) Other adverse circumstances in individual cases may justify using the higher age category.

Absent a showing of additional adversity(ies) justifying use of the higher age category, the adjudicator will use the claimant's chronological age – even when the time period is only a few days. The adjudicator need not explain his or her use of the claimant's chronological age.

Consider applying these guidelines whenever the age category changes within a few months after the alleged onset date, the date last insured (or the prescribed period), or the date of the ALJ's decision.

The Appeals Council will ordinarily deny review, assuming there is no other basis for granting review, when a borderline age situation exists, the ALJ's decision does not address the issue, and the Appeals Council does not find sufficient basis in the record for using the higher age category.

Social Security Administration's "Hearings, Appeal and Litigation Law Manual" (HALLEX), II-5-

3-2.

In view of the foregoing, the undersigned finds that Claimant, who was 116 days short of the closely approaching advanced age category, fell within the borderline age situation. Although the test set forth in HALLEX does not require the ALJ to explain his use of a claimant's chronological age, the record must contain some indicia that application of the higher age category was not warranted. See Daniels, 154 F.3d at 1135 ("Failing to consider the effect of a borderline situation in turn precludes application of the grids as a basis for finding no disability, because the Commissioner will not have shown that 'the claimant's characteristics precisely match the criteria of a particular rule.'")(internal citations omitted); Pickard, 224 F.Supp.2d at 1168. The ALJ did not consider whether a borderline age situation existed. Rather, the ALJ, noting that Claimant was a 49 year old person, which was defined as a younger person under the Regulation, found her not disabled under Rule 201.21. (Tr. at 17.) Rule 201.14 however, directs a finding of disabled for an individual who is closely approaching advanced age, with a high school education or more, capable of performing sedentary work, with skilled or semiskilled past work, and non-transferable skills. Presumably, had the ALJ considered Claimant an individual of closely approaching advanced age under the grids, she would have been found disabled.[2]

The Commissioner contends that Claimant was required to identify additional vocational adversities that justified the use of the next higher age category under the grids. Some courts have held however, that because a decision pursuant to the grids is a step five decision, it is the Commissioner's burden, not the claimant's, to establish that a case does not present a borderline age situation. See Daniels, 154 F.3d at 1133; Pickard, 224 F.Supp.2d at 1170. In Daniels, the Court

---

[2] Although Claimant stated during the administrative hearing that she would be 50 years of age in October, the ALJ did not acknowledge in his opinion her approaching change in age.

stated:

> Whatever the merits of this position outside the borderline area, we find it inapplicable to borderline situations because it ignores § 404.1563(a). Applied to borderline situations, this position essentially places the burden on a claimant to prove why the grids should not be applied mechanically. Nothing in § 404.1563(a) supports this position. The regulation provides that once it is determined that a claimant is in a borderline situation, which, as noted earlier, the Commissioner has defined solely in terms of age relative to the next category, "We" - meaning the Social Security Administration - "will not apply these age categories mechanically. The Commissioner's argument rewrites the regulation to say essentially that "in borderline situations, we will allow you - the claimant - to prove why the grids should not be applied mechanically." The plain language of the regulation does not allow this interpretation.
>
> Moreover, placing the burden on the Commissioner of determining in the first instance what age category to apply is consistent with the Commissioner's existing burdens. Application of § 404.1563(a) is a step-five issue, and the burden generally is on the Commissioner at step five. Additionally, as the Third Circuit has emphasized in this context, it is the Commissioner's burden to show that a claimant's characteristics precisely match those of the grids. See Kane [v. Heckler], 776 F.2d [1130], 1132-34 [(3d Cir. 1985)].

Daniels, 154 F.3d at 1134 (footnote omitted). The ALJ in this case, did not explain his choice of age category. Pursuant to the HALLEX Interpretation however, the ALJ is not required to explain his reasons regarding the choice of age when there are no additional adversities. Nevertheless, "the ALJ's failure to explain his choice of age category in a borderline situation both impedes judicial review of the ALJ's application of 20 C.F.R. § 404.1563(a) and appears to violate 20 C.F.R. § 404.953, which requires that decisions include 'findings of fact' and 'reasons for the decision.'" See Russell v. Commissioner of Social Sec., 20 F.Supp.2d 1133, 1136 (W.D. Mich. 1998). Accordingly, the undersigned finds that the ALJ was required to make a finding regarding his choice of age category. Given the ALJ's lack of consideration of Claimant's borderline age situation and Claimant's attainment of closely approaching advanced age status prior to the expiration of her insured status, the undersigned finds that remand is required to address this concern.

Based upon the foregoing, the Court concludes that this matter must be remanded for further administrative proceedings consistent with this Memorandum Opinion. The Court makes no recommendation or conclusion with regard to Claimant's disability status; that decision is reserved solely for the Commissioner. Upon remand, the Court requests only that the ALJ comply with all applicable Regulations when determining Claimant's age category.[3] The Court also notes that Claimant raises other objections in her Motion, but the Court will not address those issues at this time due to the fact that the case should be remanded on other grounds.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion to Remand (Doc. No. 14.) is **GRANTED**, Defendant's Motion for Judgment on the Pleadings (Doc. No. 15.) is **DENIED**, the final decision of the Commissioner is **REVERSED** and this matter is **REMANDED** to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings and is **DISMISSED** from the active docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 28, 2008.

R. Clarke VanDervort
United States Magistrate Judge

---

[3] The undersigned notes that Claimant was granted benefits as of her fiftieth birthday on a subsequent application for benefits. (Doc. No. 13 at 4, n 2.) The Court further notes that the "new and material" evidence, which Claimant asserted was attached to her Motion to Remand, was not submitted to the Court. Nevertheless, based on the nature of Claimant's allegations and statement regarding her second application for benefits, the Court presumes that such evidence consisted of the decision granting benefits on the subsequent application.